# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 15-23985-EEB |
| DON RICHARD ILEY, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) Case No. 15-23986-EEB |
| | ) Chapter 7 |
| ILEY & ASSOCIATES, INC., | ) |
| | ) Jointly Administered Under |
| Debtor. | ) Case No. 15-23985-EEB |
| TOM H. CONNOLLY, | ) |
| Chapter 7 Trustee, | ) |
| | ) Adversary Proceeding No. 17- |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST BAPTIST CHURCH OF HIGHLANDS RANCH, INC., | ) ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Tom H. Connolly, as chapter 7 trustee ("Trustee"), files this Complaint and states as follows:

### INTRODUCTION

Don Iley operated a fraudulent payroll scheme through Iley & Associates, Inc. Iley & Associates processed payroll for more than 140 clients and withdrew money from the clients' bank accounts to pay the employees' wages and was supposed to pay the federal, state, and local payroll taxes to the appropriate taxing authority. However, Iley failed to pay the federal payroll taxes on behalf of his clients from 2011 through 2015. Iley concealed his scheme by creating and filing false payroll tax returns for his clients.

Instead of paying his clients' payroll taxes as he promised, Iley used the money for personal and business purposes, including (1) to pay $260,000 for the design, construction, landscaping, and furnishing of his residence, (2) to pay $900,000 in accelerated principal payments on Iley's mortgage; (3) to make more than $1,000,000 in payments in business ventures and retirement accounts; (4) to pay hundreds of thousands of dollars in various business

1

expenses for Iley & Associates; and (5) to pay for numerous personal expenses, including his children's college tuition.

On April 18, 2017, Iley pleaded guilty to wire fraud under 18 U.S.C. § 1343 and aiding in the preparation of false tax returns under 26 U.S.C. § 7206(2). Iley admitted to improperly using at least $11,000,000 from his payroll clients. Iley received a sentence of 151 months of incarceration, followed by 36 months of supervised release.

From January 2012 through November 2015, at the same time Iley was defrauding each and every payroll client, Iley transferred a total of $123,200.00 to First Baptist Church of Highlands Ranch, Inc. Trustee seeks to avoid and recover these transfers for the benefit of creditors.

## JURISDICTION AND VENUE

1. The underlying bankruptcy cases were commenced on December 28, 2015, when creditors filed involuntary chapter 7 petitions against Don Richard Iley and Iley & Associates, Inc. Prior to ruling on the involuntary petitions, Don Iley and Iley & Associates moved to convert the cases to chapter 11. On January 26, 2016, the Court entered orders converting the cases to chapter 11 and entered orders for relief.

2. On February 2, 2016, the Court entered an order jointly administering the underlying bankruptcy cases of Don Iley and Iley & Associates.

3. On May 11, 2016, the Court entered orders converting the bankruptcy cases to chapter 7. Trustee was appointed trustee in each case.

4. On November 16, 2016, the Court entered an order substantively consolidating the assets and liabilities of the estates of Don Iley and Iley & Associates.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

6. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and (H).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

8. Trustee consents to entry of final judgment by this Court.

## GENERAL ALLEGATIONS

*Background*

9. Don Iley became a certified public accountant in 1996 and in the same year formed Iley & Associates. Through Iley & Associates, Don Iley provided accounting, tax, bookkeeping, and payroll services. From 1996 through 2015, Don Iley was the sole owner and

2

officer and exercised sole control over the finances of Iley & Associates. Don Iley and Iley & Associates may be collectively referred to as "Iley."

10. The payroll services offered by Iley & Associates involved helping clients calculate, withhold, and pay payroll taxes to the relevant taxing authorities. For each payroll period for his payroll clients, Iley was supposed to calculate the clients' federal, state, and local payroll taxes, including social security and Medicare taxes (collectively, the "Employment Taxes").

11. Iley had access to each of the payroll clients' bank accounts. For each of the clients' payroll periods, Iley would calculate the wages owed to the payroll clients' employees and the Employment Taxes. Iley would then transfer two sums from each payroll client's account into an Iley & Associates account. The first amount would be for the net wages owed to the payroll client's employees. The second amount would be for the Employment Taxes.

12. Iley would then direct deposit the wages owed to payroll client's employees directly into their bank accounts of the payroll clients' employees. Iley was then supposed to pay the corresponding clients' Employment Taxes to the relevant taxing authorities, such as the Department of Treasury, Colorado Department of Revenue, and City of Denver. Iley did so for the Employment Taxes owed to the Colorado Department of Revenue and the City of Denver.

13. Iley would calculate and prepare IRS Forms 940 and 941, among others, to report the amount of wages and Employment Taxes paid by the payroll clients. Iley would submit these forms to the payroll clients and represent to each that forms were filed and the federal Employment Taxes were paid.

*The Criminal Scheme*

14. In January 2009, Iley experimented with failing to pay the federal Employment Taxes on behalf of certain payroll clients. By January 2011, Iley expanded his scheme to include every payroll client for whom he provided payroll services. From January 2011 through December 2015, Iley paid all state and local Employment Taxes, but systematically took the money from payroll clients, but did not pay the federal payroll taxes. Instead, Iley used that money for personal and business purposes.

15. To conceal the scheme, Iley caused his employees to send to each payroll client a Form 941, which correctly calculated the federal Employment Taxes, along with a cover letter that represented that the Form 941 included with each letter was a file copy of the actual Form 941 filed with the IRS, and that Iley had paid or would pay the taxes. For example, a typical cover letter read: "Please find enclosed a file copy of your 2nd quarter payroll tax filings for your records. Don Iley pays your taxes, so there is nothing more that you need to do . . . ."

16. Instead of filing the federal Form 941 that Iley sent to each of his payroll clients (which correctly calculated the federal Employment Taxes), Iley created and filed false Form 941 returns with the Internal Revenue Service that showed that each payroll client had no

Employment Taxes due and owing and had paid no wages. Iley did this for each payroll client for each quarter from January 2011 through the discovery of his scheme in 2015.

17. In about September 2015, certain clients became aware that Iley had failed to pay their federal Employment Taxes. Those clients then demanded money from Iley. From September 30, 2015 through November 13, 2015, Iley made approximately $1,800,000 in payments to the former payroll clients or their principals who had discovered the scheme. In the same time period, Iley made payments to the Department of Treasury for the benefit of certain of the payroll clients that had discovered the scheme in the aggregate amount of approximately $866,000.

18. The vast majority of Iley's former payroll clients were not so fortunate and did not learn of the scheme until money was gone and these bankruptcy cases were commenced. In fact, despite the discovery of the scheme months before, Iley continued to collect money through November 18, 2015 from payroll clients who remained unaware of the fraudulent scheme.

19. On April 18, 2017, Iley pleaded guilty to wire fraud under 18 U.S.C. § 1343 and aiding in the preparation of false tax returns under 26 U.S.C. § 7206(2). Iley admitted to improperly using at least $11,000,000 from his payroll clients. A copy of Don Iley's plea agreement, which details the scheme, is attached as **Exhibit 1**. Don Iley received a sentence of 151 months of incarceration, followed by 36 months of supervised release.

20. Don Iley and Iley & Associates were insolvent. Within a year of starting the scheme, Don Iley and Iley & Associates owed millions to payroll service clients, and the debts continued to grow as the fraud continued. After the scheme began, the assets of Don Iley and Iley & Associates were always less than the debts resulting from the scheme because Iley spent a portion of the money on his lifestyle and paying for expenses of Iley & Associates.

21. Creditors, including Iley's victims / former payroll clients, filed claims in these cases in an aggregate amount of more than $23,000,000.

*Transfers to Defendant*

22. From January 2012 through November 2015, Don Iley paid to Defendant the total amount of $123,200.00 (the "Transfers") from accounts in the name of Don Iley and Iley & Associates. A list of the Transfers by date, amount, account number, and check number is attached as **Exhibit 2**. On information and belief, the Transfers were donations to Defendant.

23. At the time of the Transfers, and for many years prior, Don Iley was the sole source of money for the Iley family.

**FIRST CLAIM FOR RELIEF**
(Avoidance of the Transfers
Pursuant to 11 U.S.C. §§ 544, Colo. Rev. Stat. § 38-8-105(1)(a), and 11 U.S.C. § 550(a)(1))

24. Trustee incorporates his previous allegations.

4

25. The Transfers were transfers of an interest in property of Iley as the payments came from Iley's personal bank account ending in 4591 at U.S. Bank and Iley & Associates' bank account ending 8480 at Commerce Bank.

26. The Transfers were made within four years prior to the petition date.

27. The Transfers were made with actual intent to hinder, delay, or defraud Iley's victims / payroll services clients.

28. Actual fraudulent intent is shown by, among other things, the following:

   a. In the plea agreement, Iley admitted his intent to defraud the payroll service clients of Iley & Associates. At all times, Iley was the sole owner, officer, and person in control of Iley & Associates and used Iley & Associates to facilitate his scheme;

   b. Before the Transfers were made, Iley and Iley & Associates had been sued by payroll services clients, had been sanctioned by the Colorado State Board of Accountancy for failing to pay taxes for payroll services clients, and had been threatened with suit by former payroll services clients. Don Iley was engaged in a brazen criminal enterprise to defraud his payroll clients. Don Iley's criminal scheme to defraud his payroll clients and use their money for his personal purposes always carried the certainty of litigation by the payroll clients he was defrauding and criminal prosecution. The question was when, not if. Both eventually occurred, even though Don Iley carefully refined the scheme after his first attempt was discovered and he was sued and professionally reprimanded.

   c. Iley received no economic value in exchange for the Transfers because the Transfers were donations;

   d. Iley and Iley & Associates were insolvent. Specifically, Iley and Iley & Associates owed millions to payroll service clients as the result of the fraudulent scheme, and the debts continued to grow as the fraud continued. Moreover, despite the fact that his scheme had been discovered and Iley & Associates paid approximately $2,660,000 to or for the benefit of payroll clients who had discovered the scheme, Iley continued to process payroll for clients who had not yet learned of his scheme through November 18, 2015. Iley admitted to bilking his clients out of approximately $11,000,000; and

   e. Don Iley also concealed assets and failed to disclose material financial transactions, including (i) a $200,000 payment to his wife, Mary Iley, made shortly before the bankruptcy, (ii) his contribution of more than $500,000 to IRAs in the two years prior to the bankruptcy, (iii) his ownership interest in a 401(k) with a value of more than $150,000, (iv) his ownership of four additional life insurance policies with cash surrender value, and (v) his withdrawal of money from the IRAs and the undisclosed 401(k) *after* the bankruptcy was commenced.

29. In January 2009, Iley stopped paying the federal withholding taxes on behalf of certain payroll clients. By January 2011, Iley expanded his scheme to include every payroll client for whom he provided payroll services. By the time of the first of the Transfers, Iley had bilked payroll clients out of more than $1,000,000.

30. The Transfers are avoidable under Colo. Rev. Stat. § 38-8-105(1)(a) and 11 U.S.C. § 544.

31. Trustee is entitled to judgment in the amount of the Transfers against Defendant under 11 U.S.C. § 550(a)(1).

## SECOND CLAIM FOR RELIEF
### (Avoidance of the Transfers
### Pursuant to 11 U.S.C. §§ 544, Colo. Rev. Stat. § 38-8-105(1)(b), and 11 U.S.C. § 550(a)(1))

32. Trustee incorporates his previous allegations.

33. The Transfers were transfers of an interest in property of Iley as the payments came from Iley's personal bank account ending in 4591 at U.S. Bank and Iley & Associates' bank account ending 8480 at Commerce Bank.

34. The Transfers were made within four years prior to the petition date.

35. Iley did not receive reasonably equivalent value for the Transfers because the Transfers were donations.

36. Iley and Iley & Associates were hopelessly insolvent. Specifically, Iley and Iley & Associates owed millions to payroll service clients as the result of the fraudulent scheme, and the debts continued to grow as the fraud continued. Moreover, despite the fact that his scheme had been discovered and Iley & Associates paid approximately $2,660,000 to or for the benefit of payroll clients who had discovered the scheme, Iley continued to process payroll for clients who had not yet learned of his scheme through November 18, 2015. Iley admitted to bilking his clients out of approximately $11,000,000.

37. At the time of each of the Transfers, Iley intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. In fact, with each dollar Iley bilked from his payroll clients in the criminal scheme, Iley had debts he was not paying.

38. In January 2009, Iley stopped paying the federal withholding taxes on behalf of certain payroll clients. By January 2011, Iley expanded his scheme to include every payroll client for whom he provided payroll services. By the time of the first of the Transfers, Iley had bilked payroll clients out of more than $1,000,000.

39. The Transfers are avoidable under Colo. Rev. Stat. § 38-8-105(1)(a) and 11 U.S.C. § 544.

40. Trustee is entitled to judgment in the amount of the Transfers against Defendant under 11 U.S.C. § 550(a)(1).

**WHEREFORE**, Trustee respectfully requests that this Court enter an Order and Judgment:

    a. pursuant to 11 U.S.C. § 544 and Colo. Rev. Stat. § 38-8-105(1)(a) avoiding the Transfers and entering judgment in Trustee's favor and against Defendant under 11 U.S.C. § 550(a)(1) in the amount of $123,200.00;

    b. pursuant to 11 U.S.C. § 544 and Colo. Rev. Stat. § 38-8-105(1)(b) avoiding the Transfers and entering judgment in Trustee's favor and against Defendant under 11 U.S.C. § 550(a)(1) in the amount of $123,200.00; and

    c. granting any additional relief the Court deems just and proper.

Dated: November 7, 2017                    Respectfully submitted,

                                              **ONSAGER | FLETCHER | JOHNSON**

                                                *s/ Andrew D. Johnson*
                                                Andrew D. Johnson, #36879
                                                Gabrielle G. Palmer, #48948
                                           1801 Broadway, Suite 900
                                           Denver, Colorado 80202
                                           Ph: (720) 457-7061
                                           ajohnson@OFJlaw.com
                                           gpalmer@OFJlaw.com

                                           *Counsel for Tom H. Connolly as Chapter 7 Trustee*