**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 15-23985-EEB |
| DON RICHARD ILEY, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) Case No. 15-23986-EEB |
| | ) Chapter 7 |
| ILEY & ASSOCIATES, INC., | ) |
| | ) Jointly Administered Under |
| Debtor. | ) Case No. 15-23985-EEB |
| TOM H. CONNOLLY, | ) |
| Chapter 7 Trustee, | ) |
| | ) Adversary Proceeding No. 17- |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNAL REVENUE SERVICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT TO DETERMINE TAX LIABILITY**

Tom H. Connolly, as chapter 7 trustee, files this Complaint and states as follows:

**JURISDICTION, VENUE, AND *STERN***

1. The underlying bankruptcy case was commenced on December 28, 2015, when creditors filed involuntary chapter 7 petitions against Don Richard Iley and Iley & Associates, Inc. Prior to ruling on the involuntary petitions, Don Iley and Iley & Associates moved to convert to chapter 11. On January 26, 2016, the Court entered orders converting the cases to chapter 11 and entered orders for relief.

2. On February 2, 2016, the Court entered an order jointly administering the underlying bankruptcy cases of Don Iley and Iley & Associates.

3. On May 11, 2016, the Court entered orders converting the bankruptcy cases to chapter 7. Connolly was appointed trustee in each case.

1

4. On November 16, 2016, the Court entered an order substantively consolidating the assets and liabilities of the estates in the Don Iley and Iley & Associates cases.

5. Trustee's claims arise under 11 U.S.C. § 505. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

6. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

8. Trustee consents to entry of final judgment by this Court.

## GENERAL ALLEGATIONS

*Background*

9. Don Iley became a certified public account in 1996 and in the same year formed Iley & Associates. At all times, Don Iley was the sole owner of Iley & Associates and he exercised sole control over the finances of Iley & Associates (sometimes collectively referred to herein as "Iley"). Through Iley & Associates, Don Iley provided accounting, tax, bookkeeping, and payroll services.

10. The payroll services offered by Iley involved helping clients calculate, withhold, and pay taxes to the relevant taxing authorities for the clients' employees. For each payroll period for his payroll clients, Iley was supposed to calculate the clients' Federal Insurance Contribution taxes, including social security and Medicare taxes, federal and state income taxes, and local taxes.

11. For each of the clients' payroll periods, Iley would do two ACH transfers from an account maintained by the client into an Iley & Associates account. One ACH transfer would be in the amount of the net pay owed to the client's employees, which went into an Iley & Associates account at US Bank. The other ACH transfer from the client's account was in the aggregate amount of the federal, state, and local payroll and withholding taxes that Iley had calculated, which went into a different Iley & Associates account at US Bank.

12. Iley would direct deposit the net pay owed to the clients' employees into the bank accounts of the clients' employees. Iley was then supposed to pay the corresponding employer taxes and employee withholding to the relevant taxing authorities, such as the IRS or Colorado Department of Revenue. Iley did so for the amounts owed to the Colorado Department of Revenue and various cities. For the federal withholding and payroll taxes, Iley was supposed to prepare and file accurate payroll tax returns (including Forms 940 and 941), and then pay the required taxes to the appropriate taxing authority.

*The Criminal Scheme*

13. In January 2009, Iley stopped paying the federal payroll taxes and employee withholding taxes (collectively the "Payroll Taxes") to the IRS for certain payroll clients. By

January 2011, Iley expanded his scheme to include every payroll client for whom he provided payroll services. Specifically, from January 2011 through December 2015, Iley paid all state withholding and payroll taxes to the Colorado Department of Revenue, but systematically kept the money he had received from his clients by ACH transfers and instead used that money for personal and business purposes.

14. To conceal his scheme, Iley caused his employees to send cover letters to payroll clients that falsely represented that the Form 941 included with each letter was a file copy of the actual Form 941 filed with the IRS, and that Iley had paid or would pay the taxes. For example, a typical cover letter read: "Please find enclosed a file copy of your 2nd quarter payroll tax filings for your records. Don Iley pays your taxes, so there is nothing more that you need to do . . . ."

15. Instead of filing the federal Form 941 that Iley sent to each of his payroll clients (which correctly calculated a client's actual payroll tax liabilities), Iley created and filed false 941 returns with the IRS that showed that each payroll client had no payroll taxes due and owing. The Iley clients whose funds were thus misappropriated are herein referred to as the "victims".

16. Shortly before Iley was forced into bankruptcy, some of his victims became aware of the criminal scheme and confronted him. As a result, in September through November 2015, Iley & Associates disbursed approximately $1,800,000 to those victims or their principals, who had discovered Iley's scheme (the "Direct Victim Payments") and approximately $880,000.00 directly to the IRS (the "Treasury Payments"). A list of the Direct Victim Payments and Treasury Payments is attached as **Exhibit 1**.

17. As indicated above, this case was then initiated by involuntary petitions against Iley and Iley & Associates on December 28, 2015. As a result of the bankruptcy filings all of Iley's victims have become aware of the scheme.

*Claims Against the Estate*

18. Claims totaling $23,796,245.79[1] have been filed in the Iley case. A list of the claims is attached as **Exhibit 2**. The claims filed include a claim by the IRS and numerous claims by the victims of Iley's criminal scheme, including the following:

    a. The IRS filed a proof of claim asserting an unsecured claim in the amount of $15,604.79. A copy of the claim is attached as **Exhibit 3**. The basis of the claim is unclear.

    b. The IRS filed a second proof of claim asserting an unsecured § 507(a)(8) priority claim in the amount of $413,339.92. The only description for the claim is, "Civil Pen." A copy of the claim is attached as **Exhibit 4.**

---

[1] The total claim amount is far more than the $11,000,000 Iley admitted bilking from the payroll clients because many of the claims include treble damages under Colo. Rev. Stat. § 18-4-405, interest, penalties, and other amounts.

    c. The victims of Iley's scheme filed the vast majority of the other claims (collectively, the "Victim Tax Claims"). Many of the Victim Tax Claims, in addition to seeking to recover amounts Iley bilked from them, seek recovery of interest and penalties which the IRS has or may assert against them, and treble damages under Colo. Rev. Stat. § 18-4-405. The Victim Tax Claims are shown on **Exhibit 1** in yellow.

  19. On April 18, 2017, Iley pleaded guilty to wire fraud under 18 U.S.C. § 1343 and aiding in the preparation of false tax returns under 26 U.S.C. § 7206(2). Iley admitted that as part of his criminal scheme he improperly used at least $11,000,000 from his payroll clients.

  20. Iley's admission of bilking his victims of $11,000,000 is roughly consistent with Trustee's analysis of Iley's financial and bank records.

  21. Trustee further alleges that the victims are entitled to claims against the estate for the damages suffered as a result of the criminal scheme, which for each victim is limited to the actual amount which the IRS requires it to pay in settlement of the unpaid taxes, penalties and interest.

  22. Trustee further alleges, on information and belief, that the IRS has pursued and is continuing to pursue the victims of the criminal scheme by attempting to collect the unpaid taxes and that the IRS has taken inconsistent approaches to making compromises, assessing penalties and/or interest against the innocent victims. For example, some victims may be required to pay or did pay interest and/or penalties to the IRS, while others may not be required to pay even the full principal amount of taxes.

  23. The IRS claim for $413,339.92 for "Civil Pen." appears to be a penalty under 26 U.S.C. § 6672. Trustee asserts, however, that any claim allowable to the IRS is not compensation for a pecuniary loss to the extent that such tax has been or will be paid by the victim, or to the extent the IRS has reduced the amount by settlement or otherwise.

  24. As a result of the foregoing, some of the Victim Tax Claims may be overstated to the extent the IRS reduces the amount such victim must pay and does not assess interest and penalties. Moreover, any claim by the IRS will be derivative of, duplicative of, and compete with the Victim Tax Claims and would be similarly overstated.

  25. Trustee alleges that an accounting or resolution of (a) the amounts that victims who received the $1,840,000 in payments from September to November 2015 actually paid the IRS to resolve their debt to the IRS related to Iley's scheme, (b) how the $808,094.52 paid to the IRS was applied by the IRS for tax, penalty, and interest, (c) whether the victims are actually obligated to the IRS for penalties and interests even though they were innocent victims, and (d) the actual amount of unpaid taxes the IRS will demand from the holders of the Victim Tax Claims, are all essential to administration of this estate and to determining the validity and extent of any claims asserted by the IRS and victims in this case.

## FIRST CLAIM FOR RELIEF
### (Determination under 11 U.S.C. § 505)

26. Trustee incorporates his previous allegations.

27. Under § 505(a) of the Bankruptcy Code, this court may:

> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

28. In this Claim for Relief, Trustee requests that this Court enter judgment determining the IRS claim for $413,339.92 is a penalty that is not compensation for actual pecuniary loss and is therefore subordinated under 11 U.S.C. § 726(a)(4).

29. Trustee also requests that this Court determine the amount of the IRS claim in the amount of $15,604.79 and any other claim the IRS may assert in this case.

## SECOND CLAIM FOR RELIEF
### (Accounting)

30. Trustee incorporates his previous allegations.

31. Trustee alleges that all payments made to the IRS between September and November of 2015 should have reduced or eliminated the liability of the estate to the Iley victims for whose benefit those payments were made.

32. Trustee alleges that to the extent the IRS has entered into compromises or settlements with victims and agreed to accept a lesser amount than the actual employment tax, interest, and penalty asserted in the Victim Tax Claims, such reduction should reduce or eliminate the liability of the estate to each such victim. In addition, any future settlements or agreed reductions with victims should reduce or eliminate the liability of the estate on such Victim Tax Claim.

33. Trustee requests an accounting from the IRS detailing the how the Treasury Payments were applied.

34. Trustee also requests an accounting of all compromises and settlements accepted by the IRS regarding the tax, interest, and penalties identified in the Victim Tax Claims.

## THIRD CLAIM FOR RELIEF
### (Determination of Tax under 11 U.S.C. § 505)

35. Trustee incorporates his previous allegations.

36. Under § 505(a) of the Bankruptcy Code, this court may:

> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

37. Trustee alleges that the tax need not be the estate's tax, as long as determination of the tax is relevant to the administration of the estate.

38. In this Claim for Relief, Trustee requests that this court enter judgment determining (a) the amount of each of the Victim Tax Claims; and (b) that the holders of the Victim Tax Claims are not liable for penalties and interest resulting from Iley's willful failure to timely remit tax funds on their behalf.

**WHEREFORE**, Trustee respectfully requests that this Court enter an Order:

a. determining the IRS claim for $413,339.92 is not for compensation for an actual pecuniary loss and subordinating the claim under § 726(a)(4);

b. determining allowability and priority of the IRS claim for $15,604.79;

c. determining the allowability and priority of any other claim the IRS files in these cases;

d. determining that the holders of the Victim Tax Claims are not liable for interest and penalties for Iley's failure to pay the employment taxes;

e. determining the amount of each of the Victim Tax Claims and determining the estate is not liable for any amounts compromised or settled by the IRS, including penalties and interest;

f. requiring the IRS to produce an accounting of (1) how the IRS has applied funds received, including the Treasury Payments, or to be received, (2) the amount the IRS required the recipients of the Direct Victim Payments to pay in tax, interest, and penalties related to Iley's scheme, and (3) compromises and settlements granted; and

g. granting any additional relief the Court deems just and proper.

Dated: December 4, 2017                    Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON, LLC**

 s/ Andrew D. Johnson
   Andrew D. Johnson, #36879
   Gabrielle G. Palmer, #48948
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (720) 457-7061
ajohnson@OFJlaw.com
gpalmer@OFJlaw.com

*Counsel for Tom H. Connolly as Chapter 7 Trustee*